RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RENE ANTONIO GONZALEZ-DE LEON,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 18-3583

On Petition for Review from the Board of Immigration Appeals;
No. A 208 203 847.

Decided and Filed:  August 5, 2019

Before:  GILMAN, SUTTON, and WHITE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Sarah C. Larcade, MCKINNEY & NAMEI CO., L.P.A., Cincinnati, Ohio, for
Petitioner.  Tracy N. McDonald, UNITED STATE DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Petitioner Rene Gonzalez-De Leon
(Gonzalez), a native and citizen of Guatemala, surrendered himself at the United States border
and requested asylum.  Gonzalez alleges that he would be persecuted and tortured because of his
status as a former taxi driver if he is removed to Guatemala.  An immigration judge (IJ) denied
Gonzalez's application for asylum, withholding of removal, and protection under the United

Nations Convention Against Torture (CAT). The Board of Immigration Appeals (BIA) affirmed. Gonzalez then filed this timely appeal.

On appeal, Gonzalez argues that the BIA erred in (1) affirming the IJ's adverse credibility finding, and (2) concluding that "taxi drivers in Guatemala," "taxi drivers living in the poppy producing region of Guatemala," and "Guatemala taxi drivers who have refused gang recruitment and extortion" are not cognizable as "particular social groups" under asylum law. Gonzalez also contends that (3) the IJ and the BIA did not have the authority to hear Gonzalez's case because the Notice to Appear issued to him did not specify the date and time of the hearing. For the reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

Gonzalez was a taxi driver in an area of Guatemala with significant drug trafficking, poppy cultivation, and opium production. As a taxi driver, he became very knowledgeable about the geography of the surrounding communities. Eventually, Gonzalez learned that he had been unknowingly transporting drugs for local gang members.

Members of the gang first threatened Gonzalez around January 2015. Gonzalez responded by telling them that he was not going to participate in drug trafficking or gang activities. After he refused to help them, Gonzalez began receiving more threats. In June 2015, gang members threatened to kill Gonzalez, his wife, and his son. This caused Gonzalez to stop working as a taxi driver, and he began working as a mechanic in order to save the money needed to flee the country. He ultimately fled Guatemala around October 2015.

Gonzalez arrived at a port of entry in Arizona on October 26, 2015. The next month, an asylum officer found that Gonzalez had demonstrated a credible fear of persecution or torture. On November 30, 2015, Gonzalez was given a Notice to Appear, which did not notify him of the date or time that he was to appear before an IJ. But Gonzalez was given a Notice of Hearing the following day, stating that his case was scheduled for a master-calendar hearing on December 7, 2015, at 8:30 a.m. He appeared at the master-calendar hearing and ultimately applied for asylum, withholding of removal, and CAT protection.

In May 2017, the IJ denied Gonzalez's application. The IJ concluded that Gonzalez was not credible, stating that Gonzalez's testimony conflicted with his answers given during the "credible-fear" interview with the asylum officer in November 2015. In addition, the IJ determined that Gonzalez was not eligible for asylum, withholding of removal, or CAT protection. Specifically, the IJ found that Gonzalez had not shown that he was a member of a particular social group that is subject to protection under asylum law. Gonzalez then filed a timely appeal to the BIA. The BIA affirmed the IJ's decision, concluding that Gonzalez's "three proposed particular social groups . . . do not pass legal muster" because "taxi driving is not an immutable characteristic on which a particular social group may be based."

## II.  ANALYSIS

### A.    Standard of review

"Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). "To the extent that the BIA has adopted the IJ's reasoning, however, we also review the IJ's decision." *Id.* "Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the [Immigration and Nationality Act] and accompanying regulations. The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citations and internal quotation marks omitted).

### B.    Gonzalez's asylum application

We first address whether the BIA erred in affirming the IJ's denial of Gonzalez's application for asylum. Gonzalez argues that the BIA erred in affirming the IJ's adverse credibility determination and in concluding that Gonzalez did not articulate a particular social group that is cognizable under asylum law. We have no need to address the credibility determination because the BIA "set[] aside the adverse credibility finding and presum[ed] [Gonzalez's] credibility on appeal."

To qualify for asylum, an applicant must be unable or unwilling to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If an applicant requests asylum based on being part of a particular social group, he must establish that the group is "composed of individuals who share a 'common, immutable characteristic.'" *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 546 (6th Cir. 2003), *abrogated on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)). The group's shared characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Castellano-Chacon*, 341 F.3d at 547 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)).

In addition, this court has held that "[a]n alleged social group must be both particular and socially visible." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010). Particularity refers to "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani*, 585 F.3d at 994 (quoting *Matter of S–E–G–*, 24 I. & N. Dec. 579, 584 (BIA 2008)). Social visibility "requires 'that the shared characteristic of the group should generally be recognizable by others in the community.'" *Id.* (quoting *Matter of S–E–G–*, 24 I. & N. Dec. at 586). In other words, social visibility requires that the set of individuals with the shared characteristic be "perceived as a group by society." *Matter of S–E–G–*, 24 I. & N. Dec. at 586 (internal quotation marks omitted).

Gonzalez posited three proposed particular social groups: "taxi drivers in Guatemala," "taxi drivers living in the poppy producing region of Guatemala," and "Guatemala taxi drivers who have refused gang recruitment and extortion." This court has previously rejected proposed groups based on employment status. For instance, in *Khozhaynova v. Holder*, 641 F.3d 187 (6th Cir. 2011), this court held that "business owners who refuse[] to pay for protection from the mafia" are not a part of a particular social group. *Id.* at 195. This court has also rejected the claim that individuals targeted to join gangs qualify as a particular social group for asylum purposes. *Umana-Ramos v. Holder*, 724 F.3d 667, 673–74 (6th Cir. 2013). Taxi drivers as a

social group are not legally distinguishable from the proposed social groups previously rejected. *See also Miranda v. Sessions*, 892 F.3d 940, 943 (8th Cir. 2018) (concluding that former taxi drivers from El Salvador are not a particular social group).

We agree with the Eighth Circuit's conclusion in *Miranda* despite Gonzalez's contention that his status as a former taxi driver is an immutable characteristic that can form the basis of a particular social group.  Gonzalez premises his argument on the point that he will always have the "knowledge and familiarity with the area [that] he obtained by being a taxi driver." According to the record, however, the gangs did not contact Gonzalez once his work as a taxi driver ceased.  And there is no evidence that Gonzalez would be targeted as a former taxi driver, nor any evidence that former taxi drivers are perceived as a distinct group by Guatemalan society or by the gangs.  We therefore conclude that the BIA did not err in finding that Gonzalez failed to articulate a particular social group protectable under asylum law.

**C.      The authority of the IJ and the BIA to hear Gonzalez's case**

This brings us to Gonzalez's argument that a Notice to Appear does not vest subject-matter jurisdiction in the immigration court unless the Notice to Appear specifies the date and time of the proceedings.  For this position, he relies on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which held that a Notice to Appear that fails to designate the specific time or place of proceedings does not trigger the stop-time rule that ends the noncitizen's period of continuous presence in the United States.  *Id.* at 2112–20.

We have already rejected Gonzalez's argument both in *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018), and in *Santos-Santos v. Barr*, 917 F.3d 486 (6th Cir. 2019). Specifically, we have held that "jurisdiction vests with the immigration court where . . . the mandatory information about the time of the hearing . . . is provided in a Notice of Hearing issued after the [Notice to Appear]." *Hernandez-Perez*, 911 F.3d at 314–15.  The stop-time issue is a separate matter that involves different regulations.  *Santos-Santos*, 917 F.3d at 489–90. Gonzalez's Notice to Appear, which omitted the date and time of the hearing, was promptly followed by a Notice of Hearing that provided this information.  As a result, both the IJ and the BIA had jurisdiction over Gonzalez's case.

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Gonzalez's petition for review.