**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0190n.06

Case No. 19-3664

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| AMELIA BRAVO-DOMINGO, PRICILA BRAVO-DOMINGO, and EXAIDA PEREZ-BRAVO, | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) |
| WILLIAM P. BARR, Attorney General, | ) ) |
| Respondent. | ) ) |

**FILED**
Apr 02, 2020
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

BEFORE: NORRIS, DONALD, and NALBANDIAN Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Petitioner Amelia Bravo-Domingo,[1] along with her two children, seek an order from this Court holding that error was committed below when the Board of Immigration Appeals affirmed the holding of an immigration judge denying her petition for asylum, request for withholding of removal, and protection under the Convention Against Torture. The immigration judge dismissed Amelia's petition for asylum and withholding of removal for failure to provide sufficient evidence that she suffered persecution or had a well-founded fear of persecution on the account of her membership in a particular social group. The immigration judge denied Amelia's request for protection under the Convention Against Torture

---

[1] We will refer to Amelia Bravo-Domingo using her first name, as there are two Petitioners with the same surname.

due to her failure to show that the Guatemalan government either perpetuates or acquiesces in any human rights violations against persons similarly situated to her or her children and her failure to present sufficient evidence that she would be unable or even attempted to relocate to another part of Guatemala where she and her family would be free from harassment or gangs. The Board of Immigration Appeals affirmed and adopted the rulings and reasonings of the immigration judge, except it made no determination under the Convention Against Torture regarding Amelia's ability or efforts to relocate safely. Because we find that Amelia does not present sufficient evidence tying allegations of past or future persecution to her membership in a particular social group or demonstrating the Guatemalan government perpetuates or acquiesces to rights violation of the kind Amelia alleges, we **DENY** the petition for review.

I.

Factual Background

The following facts are based on Amelia's testimony at her hearing before an immigration judge ("IJ") in January 2011. Amelia was born in Culico, Guatemala, in January 1984. She has two children and lives in Memphis, Tennessee, with her husband and other family members. Amelia entered the United States with her two children on May 17, 2015, approximately ten years after her husband moved here. Her father and siblings still live in a Guatemalan village known as Las Pilas, where she also lived prior to coming to the United States. Amelia also has an uncle with "a lot of money" named Valentine Bravo, who lives close by in that same Guatemalan "town[.]" Admin. R. 114, 119, 147.

Amelia testified that while living in Guatemala her uncle harmed and/or threatened her and her family. She further testified that the problems with her uncle started in 1996 and persisted until she moved to the United States. According to Amelia, her uncle falsely accused her of

stealing a necklace in 1996 because "he likes to have problems." *Id.* at 113-14  When Amelia's uncle threatened her father and told him to pay for the necklace, her father complied.

Despite the payment for the necklace, problems continued.  Amelia's uncle kept threatening her father, which included death threats.  The uncle also continued to threaten Amelia on multiple occasions.  Amelia testified that she was required to cross her uncle's land on a daily basis to complete everyday tasks, such a go to the store, but that her uncle would tell her that she could not cross his land because he would hit or kill her.  She also testified that her father went to the police in 1997 and filed a complaint regarding her uncle's threats.  Amelia asserts that the police did not help her family, however, because her father did not have the money to pay the police to listen.

In addition to verbal threats, Amelia testified that her uncle tried to run her over with his car in 2010, while her children were with her.  She avoided the collision, however, by moving over to the side of the road.  She stated her uncle told them not to walk on the road or he would kill them.  According to Amelia, she was afraid her uncle would actually kill her.

Amelia also claims that her uncle threatened her sister Claudia in 2010.  Specifically, her uncle went into Claudia's room, despite not living at the house, and threatened to kill Claudia with a machete.  Claudia was able to escape without harm, nonetheless, because her uncle left when she closed the door and asked him to leave.  When asked why he did this, Amelia said, "because he likes to have problems and [] he can't find [] who to fight with." *Id.* at 123.  Around this same time, but on different occasions, other threats were lodged towards Claudia by the uncle.

Further, Amelia asserts that her father continues to have problems with her uncle because the uncle keeps threatening him over the necklace.  The most recent threat to her father articulated

occurred in 2010 and involved a weapon. The basis of the threat was the same. Amelia generally testified that her uncle still threatens her dad and that her dad is afraid but cannot afford to leave.

Amelia additionally testified that her uncle killed her sister Flores' husband by assaulting him in April 2011. Although Amelia and her siblings went to the police and the police conducted an investigation, nobody was arrested because, as she previously explained, Amelia's family was unable to give the police any money. This was despite Amelia telling the police that her uncle committed the killing.

Amelia testified that she fears her uncle will harm and torture her and her children if she returns to Guatemala, as they could be raped or killed. Amelia also claimed that she could not move to a different part of Guatemala because she does not have money and could not borrow the money. Given her lack of and ability to secure money, she also testified that she could not go to the police in Guatemala. Although Amelia stated that her husband was sending money to her and the children prior to them coming to the United States, she is not sure whether her husband would go with her to Guatemala if she were to be removed from the United States. She testified that if her husband stayed in the United States, he would continue to support the family from afar, but the money would not be enough to afford land in Guatemala. Amelia also has family in another part of Guatemala—the city of Agua Dulce—but she stated that she would not be safe there because it was the same there as in her hometown and that her uncle would use his money to find her.

Amelia's sister, Flores, still lives in the same town as her uncle in Guatemala. Amelia stated that since her uncle hurt people, does a lot of harm, and killed Flores' husband, Flores is in danger. Amelia has other family that also live in the same town as her uncle.

The IJ also discussed with Amelia three letters submitted by her family. When asked why none of the letters mentioned any threats from Amelia's uncle or additional incidents after 2011, Amelia said that even though the letters do not mention that, it was true; her family members just felt nervous. The IJ also noted that, according to the letters, Amelia made the decision to come to the United States because of gangs and extortion, which Amelia confirmed while also stating that she moved here because of her uncle. The IJ also asked Amelia whether her uncle ever physically harmed her. Amelia testified that when she would bring back wood or water and cross her uncle's property, he would threaten her, telling her he was going to kill her, and would push her. She also reiterated that she or family members went to the police three times between 1996 and the present but that the police paid no attention to them.

Towards the end of the hearing, the IJ asked Amelia why her uncle threatens and targets her, to which she, again, responded that ever since "he said that I . . . stole[] his chain necklace . . . he kept doing it." *Id.* at 147. She also restated that her uncle threatens her other sibling too, reasoning that "he likes to have problems[,]" "he can't stand seeing . . . any of [the] family" members, and he hates them. *Id.* at 148. All this, according to Amelia's supposition, is over the same alleged necklace thievery; her uncle still holds that against them. According to Amelia, prior to the 1996 allegation of the stolen necklace, her uncle was "more calm[.]" *Id.* at 149.

Procedural History

On May 12, 2015, the United States Department of Homeland Security issued a notice to appear, charging Amelia with being an alien in the United States without being admitted or paroled. On April 20, 2016, Amelia filed her application for asylum and withholding of removal under section 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, and for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman

or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 1208.16(c). The IJ held a merits hearing on January 11, 2018. Only Amelia testified at the hearing. That same day, the IJ issued both an oral and a written decision denying all relief. The IJ found that, although Amelia's testimony concerning core issues was credible, she did not provide sufficient evidence that she suffered past persecution or has well-founded fears of future persecution on account of any valid ground. Thus, the IJ denied the application for asylum and withholding of removal without determining whether Amelia's proposed social group is cognizable or that she failed to establish past persecution or a well-founded fear of future persecution.

The IJ denied relief under CAT based on Amelia's failure to provide sufficient evidence that she was tortured, or more likely than not would be tortured if removed to Guatemala. More specifically, the IJ reasoned that the actions of the alleged perpetrators in this action were committed by private individuals and not government actors (*i.e.*, gang members and Amelia's uncle), that the police's failure or inability to act on Amelia's complaints are not sufficient to meet her evidentiary burden, and that the evidence does not show that the Guatemalan government either perpetuated or acquiesced in any human rights violations against persons similarly situated to Amelia or her children. The IJ also noted Amelia has family members living in Guatemala that are not presently harassed by her uncle and stated there is insufficient evidence that Amelia would be unable or ever attempted to relocate to another part of Guatemala where she and her family would be free from harassment or gangs.

Amelia appealed but the Board of Immigration Appeals ("BIA") affirmed the IJ's ruling and dismissed Amelia's claims for asylum, withholding of removal, and protection under the CAT on July 3, 2019. Regarding her requests for asylum and withholding of removal, the BIA adopted the IJ's conclusion and reasoning that Amelia had not established a nexus between her alleged

persecution in Guatemala and one of the five protected grounds under the INA. As to her request under the CAT, the BIA found that although Amelia did not meaningfully challenge the IJ's decision regarding the CAT on appeal, the record evidence did "not support the conclusion that it is more likely than not that the Guatemalan government would torture [Amelia], acquiesce [to her torture], or be willfully blind to her torture" were she to return there, as required for protection under the CAT. Admin. R. 8. Amelia timely appealed.

## II.

"Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Gonzalez-De Leon v. Barr*, 932 F.3d 489, 492 (6th Cir. 2019) (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009)). To the extent that the BIA adopts the IJ's reasoning, however, we additionally review the IJ's decision. *Id.*

Although we review questions of law *de novo*, "we give deference to the BIA's interpretation of the [INA] and accompanying regulations." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293 (6th Cir. 2016). We review factual findings, "including those relevant to 'credibility determinations, denial of asylum applications, withholding of removal, and the CAT,'" under the deferential substantial-evidence test. *Id.* (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). Under this standard, we will "uphold a BIA determination as long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Parlak v. Holder*, 578 F.3d 457, 462 (6th Cir. 2009) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)). "[U]nless any reasonable adjudicator would be compelled to conclude to the contrary," the BIA's "administrative findings of fact are conclusive[.]" 8 U.S.C. § 1252 (b)(4)(B).

III.

We hold that the BIA did not err in finding that Amelia fails to meet the requirements for asylum, withholding of removal, or protection under the CAT.  In challenging the determinations below, Amelia makes the following arguments: the BIA and IJ violated her Fifth Amendment Due Process rights by failing to consider all of the factors present, as a whole, establishing her eligibility for the relief requested, as (1) it was error to find that the harm she suffered is not severe enough to rise to the requiste level of past persecution; (2) it was error to find that she did not have an objectively reasonable fear of future persecution based on her membership in a particular social group; and (3) it was error to find that she is able to relocate to a safe haven in another part of Guatemala.

A.

"To establish eligibility for asylum, an applicant must establish [s]he is a 'refugee' within the meaning of the statute."  *Lynch*, 819 F.3d at 294 (quoting *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009)); *see Harmon v. Holder*, 758 F.3d 728, 735-37 (6th Cir. 2014).  The INA generally defines "refugee" as any person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [her] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]"  8 U.S.C. § 1101(a)(42).  To qualify for asylum, a person must show that one of the aforementioned protected grounds "was or will be at least one central reason for" their persecution.  8 U.S.C. § 1158(b)(1)(B)(i).  To make this showing, the person "must produce convincing evidence of a *causal connection*; that is, convincing evidence that the harm was premised on a statutorily protected ground" between the particular social group

and the harm.  *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010) (quoting *Amouri v. Holder*, 572 F.3d 29, 33 (1st Cir. 2009)).

Upon review, we cannot conclude that the BIA erred by holding that Amelia's claim for asylum fails on the nexus requirment—that is, we agree Amelia failed to sufficiently establish that she and her family suffered or would suffer the mistreatment alleged "on account of" her membership in the proposed social group.  As an initial matter, the BIA adopted the IJ's factual finding that Amelia's uncle targeted her because of a belief she stole a necklace from him and that he harbored resentment over that belief, not because of her membership in her family.  This finding was supported by reasonable, substantial, and probative evidence on the record considered as a whole, as Amelia repeatedly testified that her uncle's disposition and actions towards her and her family are rooted in this belief.  With that, we cannot find that Amelia's uncle threatened and/or harmed Amelia because of her membership in a protected social group.  *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008) (explaining that persecution because of a personal dispute is not persecution on account of protected ground); *Matter of M-E-V-G-*, 26 I&N Dec. 227, 235 (BIA 2014) ("[A]sylum and refugee laws do not protect people from general conditions of strife, such as crime and other societal afflictions."); *Matter of A-B-*, 27 I&N Dec. 316, 337 (A.G. 2018) ("[P]rivate criminals are motivated more often by greed or vendettas than by an intent to 'overcome [the protected] characteristic of the victim.'" (citing *Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996))).  Although Amelia argues that her father's payment to her uncle for the necklace reveals that her family membership motivated her uncle's behavior, this contention does account for Amelia's testimony that her uncle started threatening and/or harming her the same year he

accused her of stealing her necklace and continues such harassment/harm to this day because of that incident and because he "likes problems."[2]

### B.

For purposes of qualifying for withholding of removal, an applicant "must show 'that it is more likely than not that . . . she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal.'" *Bonilla-Morales*, 607 F.3d at 1138 (quoting 8 C.F.R. § 1208.16(b)(2)). Notably, an applicant that fails to satsify the burden of proof for asylum also fails to satisfy the heightened burden for witholding of removal. *Id.* at 1138-39. Given that Amelia does not meet the nexus requirment for purposes of asylum, she cannot meet the heightened requirement of showing that she would more likely than not be persecuted if she went back to Guatemala "on acount of" her membership in a particular social group.

### C.

"To qualify for CAT relief, an applicant must establish that it is 'more likely than not' that [s]he would be tortured if deported to the country of removal." *Lynch*, 819 F.3d at 294 (quoting *Zhao v. Holder*, 569 F.3d 238, 241 (6th Cir. 2009)). Torture, however manifested, "must entail the intentional infliction of severe mental or physical pain upon an individual by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* at 294-95 (quoting *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009)).

We do not find error in the BIA's determination that Amelia failed to demonstrate that she more likely than not will be tortured by, or with its acquiesence of, the Guatemalan government if

---

[2] To the extent Amelia sought protection from gangs as one of her bases here, and rulings were made below on that issue, Amelia does not lodge any related contention here.

she is removed. As seen above, the record consists of proof that Amelia fears threats and/or harm from her uncle and gangs. As found by the IJ, however, these are private actors and not government actors. Although Amelia testified that the police continually fail to assist her related to these matters and she provided reports stating that the abuse of women and children are commonly committed with impunity in Guatemala, the police's failure or inability to protect citizens, alone, does not show acquiescence. *Torres v. Sessions*, 728 F. App'x 584, 589 (6th Cir. 2018) ("[T]he inability of a government to control the alleged perpetrators of torture or successfully eliminate the torture is not alone conclusive of that government's acquiescence. And a fear of crime in general is insufficient 'to establish eligibility for withholding of removal under the [Convention Against Torture].'" (citations omitted) (quoting *Palma-Campos v. Holder*, 606 F. App'x 284, 287 (6th Cir. 2015)); *see Ventura-Reyes v. Lynch*, 797 F.3d 348, 363 (6th Cir. 2015). Moreover, no other evidence in the record supports the Amelia's contention that it is more likely than not that the Guatemalan government perpetuates or acquiesces in human rights violations against persons similarly situated to Amelia and her children. As found below, these are private individuals, not government actors.

D.

This Court can consider due process claims asserting a correctable procedural error stemming from the determinations of an IJ and the BIA, so long as said claims are "properly presented to the BIA and considered on their merits." *Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2018) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). Notably, "[c]laims alleging errors related to the consideration of evidence . . . fall within the category of correctable procedural errors and are thus subject to the statutory exhaustion requirement." *Id.*

We find that Amelia's due process claim based on a failure of the IJ and BIA to consider "all factors present" and "all of the evidence presented in totality[,]" (Pet.'r's Br. 38-39), fails because she did not satisfy the exhaustion requirement. Amelia neither raised her due process concern in her notice of appeal to the BIA nor in her supporting brief.

## IV.

Because Amelia does not present sufficient evidence tying her allegations of past or future persecution to her membership in a particular social group or demonstrate that the Guatemalan government perpetuates or acquiesces to human rights violation of the kind Amelia alleges, she is not entitled to the relief she seeks.

Accordingly, we deny the Petition.