**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0274n.06

**No. 19-3726**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 14, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DARLIN EMERITA ALFARO-URBINA; LIAM EDGARDO ZELAYA-ALFARO, | ) ) ) | |
| *Petitioners*, | ) ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| WILLIAM P. BARR, Attorney General, | ) ) | |
| *Respondent*. | ) ) ) | **OPINION** |

---

**Before: CLAY, COOK, and WHITE, Circuit Judges.**

**CLAY, Circuit Judge.** Petitioner Darlin Alfaro-Urbina, on behalf of herself and her minor child, asks this Court to review the Board of Immigration Appeals' decision affirming the Immigration Judge's order denying asylum, withholding of removal, and protection under the Convention Against Torture. *See* 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. 1208.16(c). For the reasons that follow, we deny the petition for review.

**I. BACKGROUND**

Alfaro-Urbina and her child are citizens of Honduras. They entered the United States in August 2015 and were apprehended by border patrol officers that same day. Alfaro-Urbina was then referred for a credible fear interview. During the interview, she reported that she owned a grocery store in Honduras. She said that she had been operating the store for only one month when she was extorted for money by gang members. The gang members came to her store, asked for

100,000 lempiras, and said that if she did not pay, they would kill her and her child. When making this threat, they pointed a gun at her child's head.

Alfaro-Urbina did not pay what the gang members requested because she did not have enough money. She reported the extortion to the Honduran police, but the police were not able to locate the gang members. Fearing for her life and the life of her child, she closed her store and fled to the United States. Based on these statements, the asylum officer found that Alfaro-Urbina had a credible fear of persecution.

Later that day, the Department of Homeland Security ("DHS") issued Alfaro-Urbina a notice to appear for removal proceedings, charging her and her child with applying for admission without valid travel documents. *See* 8 U.S.C. § 1182(a)(7)(A)(i). Alfaro-Urbina conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *See* 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. 1208.16(c).

Alfaro-Urbina's application for asylum and withholding of removal was based on her fear of persecution for "[m]embership in a particular social group." *See* 8 U.S.C. § 1158(b)(1)(B) ("To establish that the applicant is a refugee . . . the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."); *id.* § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."). She proposed two putative social groups. First, with respect to the past instances of extortion, she proposed "Honduran business owners, who are Honduran business owners who refuse to cooperate with gangs." (A.R. at 105.) Second, with

2

respect to her fear of future persecution, she proposed "former business owners that fled Honduras after failing to cooperate with gangs." (A.R. at 106.) In support of her application, Alfaro-Urbina testified that gang members with MS-13 tattoos had come to her shop on three separate occasions in one month and threatened her and her child with harm if she did not satisfy their demands for money.

The Immigration Judge ("IJ") denied Alfaro-Urbina's application for asylum and withholding of removal. The IJ found that the prior instances of extortion Alfaro-Urbina had endured did not constitute past persecution under relevant case law. Further, the IJ found that even if the prior instances of extortion did rise to the level of past persecution, Alfaro-Urbina had failed to show that she is a member of a cognizable social group, and she had failed to demonstrate any nexus between her membership in the purported social group and her persecution. Lastly, the IJ found that Alfaro-Urbina had failed to establish that the Honduran government could not assist her in her efforts towards safety for herself and her child, and she had failed to show that she would not reasonably be able to safely relocate within Honduras. With regard to her fear of future persecution upon removal to Honduras, the IJ again concluded that Alfaro-Urbina had failed to demonstrate that she is a member of a cognizable social group and had failed to show any nexus between the putative social group and her fear of future persecution. He also found that Alfaro-Urbina's fear was not objectively reasonable. Finally, with regard to CAT protection, the IJ found that there was insufficient evidence in the record to show that Alfaro-Urbina and her child would likely be tortured upon removal to Honduras at the instigation of, or through the acquiescence of, a public official.

The Board of Immigration Appeals ("BIA") upheld the IJ's decision. The BIA agreed with the IJ that Alfaro-Urbina had failed to demonstrate membership in a cognizable social group, and that she had failed to show any nexus between her alleged persecution and a protected ground. The BIA also agreed with the IJ that Alfaro-Urbina failed to demonstrate her entitlement to protection under the CAT. Thus, the BIA dismissed the appeal, and Alfaro-Urbina now petitions this Court for review of the BIA's order. *See* 8 U.S.C. § 1252.

## II. DISCUSSION

### A. Standard of Review

"On petitions from BIA decisions, we review questions of law *de novo*, but 'substantial deference is given to the BIA's interpretation of the INA and accompanying regulations.'" *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). In contrast, we review the BIA's factual findings for "substantial evidence," and will reverse its decision "if the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. . . .").

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, . . . we review the BIA's opinion as the final agency determination." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015) (alteration in original) (quoting *Khalili*, 557 F.3d at 435). "However, to the extent the BIA adopted the immigration judge's reasoning, this court also reviews the immigration judge's decision." *Id.*

### B. Asylum & Withholding of Removal

On appeal, Alfaro-Urbina argues that the BIA erred in finding that she did not demonstrate persecution on the basis of her membership in a cognizable social group. Because the BIA's decision on this point was supported by substantial evidence, we deny her petition for review. *See, e.g.*, *Khalili*, 557 F.3d at 436.

In order to qualify for asylum and withholding of removal, Alfaro-Urbina was required to show that she had been persecuted or reasonably feared future persecution on account of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(A); *accord, e.g.*, *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "To be legally cognizable, a proposed social group must be (1) composed of members who share a common, immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question." *Lopez-De Flores v. Barr*, 799 F. App'x 521, 522 (9th Cir. 2020); *see, e.g.*, *Lugovyj v. Holder*, 353 F. App'x 8, 10 (6th Cir. 2009) ("A 'social group' is a group of persons all of whom share a 'common, immutable characteristic,' . . . 'a fundamental characteristic that either cannot be changed or should not be required to be changed because it is fundamental to the members' individual identities or consciences.'" (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 546-47 (6th Cir. 2003))).

Alfaro-Urbina alleged that she was a member of two putative social groups: "Honduran business owners, who are Honduran business owners who refuse to cooperate with gangs" (A.R. at 105), and "former business owners that fled Honduras after failing to cooperate with gangs," (A.R. at 106). This Court has repeatedly declined to find such social groups sufficient for asylum and withholding purposes.

In *Khozhaynova v. Holder*, 641 F.3d 187 (6th Cir. 2011), we rejected a claim that a business owner who refused to comply with criminal extortion demands was a member of a cognizable social group, stating that "[w]hile these events are unfortunate, and may have occurred because of her status as a business owner, they are insufficient to establish persecution on the basis of either a protected social group or her political opinion," *id.* at 195. Similarly, in *Lugovyj*, we found "unpersuasive . . . the contention that petitioner's mere defiance of unidentified thugs' extortion demands renders him a member of a protected social group." 353 F. App'x at 10. This was because "a social group may not be circularly defined by the fact that it suffers persecution." *Id.* (quoting *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005)). And in *Jelkovski v. INS*, 103 F. App'x 578 (6th Cir. 2004), we rejected the petitioner's claim that he was "subjected to persecution by organized crime elements . . . who engaged in extortion on the basis of his membership in the social group of small businessmen," *id.* at 579; *see also Gonzalez-De Leon v. Barr*, 932 F.3d 489, 493 (6th Cir. 2019) (declining to recognize "Guatemala taxi drivers who have refused gang recruitment and extortion" as a cognizable social group).

Alfaro-Urbina has not demonstrated any reason why her situation is different from those faced by the petitioners in the above cases. As in each of those cases, Alfaro-Urbina was a business owner who faced extortion threats from unidentified criminals. But this Court and others have consistently held that such heightened exposure to threats—which often accompanies business ownership—while regrettable, does not satisfy the statutory standard for asylum or withholding of removal on the basis of membership in a particular social group. *See, e.g.*, *Khozhaynova*, 641 F.3d at 195; *see also Lopez-De Flores*, 799 F. App'x at 522 ("[S]mall business merchants do not share a common, immutable characteristic."); *Gomez De Sandoval v. U.S. Attorney Gen.*, 744 F. App'x

628, 633 (11th Cir. 2018) ("[T]he fact that small business owners may be convenient targets for extortion is not alone sufficient to show that small business owners are a 'particular social group' within the meaning of the statute.").

Moreover, even if Alfaro-Urbina's proposed social groups were cognizable under our caselaw, there was substantial evidence supporting the BIA's determination that Alfaro-Urbina failed to demonstrate a nexus between her membership in that group and her claimed persecution. In order to qualify for asylum, there must be "a link between the acts of persecution and the petitioner's protected-group identity." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011). "It is not sufficient that the applicant has been subjected to indiscriminate abuse, . . . or has been the victim of a random crime. Instead, the applicant must establish that he or she was specifically targeted . . . for abuse based on one of the statutorily protected grounds." *Gomez-Chavez v. Barr*, 791 F. App'x 573, 578 (6th Cir. 2019) (alterations in original) (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)).

In the present case, there is sufficient evidence to support the BIA's determination that Alfaro-Urbina "has not established a nexus to a protected ground" because she has not shown that she was targeted by the gang members "on account of" her ownership of the shop. (A.R. at 4.) Instead, as the IJ found, "Honduras has a serious problem with crime and gangs," and Alfaro-Urbina did not demonstrate that the gang members' targeting of her "was on account of anything other than criminality and the desire of the gang to increase its str[o]ng-hold on the Honduran populous." (A.R. at 55–56.) Accordingly, the BIA's decision to deny her claims for asylum and withholding of removal must be upheld.

### C. Convention Against Torture

There is also substantial evidence supporting the BIA's decision to deny Alfaro-Urbina protection under the CAT. "To qualify for CAT relief, an applicant must establish that it is 'more likely than not' that he would be tortured if deported to the country of removal." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294 (6th Cir. 2016) (quoting *Zhao v. Holder*, 569 F.3d 238, 241 (6th Cir. 2009)); *see also* 8 C.F.R. § 1208.16(c)(2). "Torture, in any of its myriad manifestations, must entail the intentional infliction of severe mental or physical pain upon an individual by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Bi Qing Zheng*, 819 F.3d at 294 (quoting *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009)). Moreover, "the inability of a government to control the alleged perpetrators of torture or successfully eliminate the torture is not alone conclusive of that government's acquiescence." *Torres v. Sessions*, 728 F. App'x 584, 589 (6th Cir. 2018); *see also, e.g.*, *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015) ("That the Salvadoran government is unable to control the gangs does not constitute acquiescence.").

Alfaro-Urbina's only evidence of government acquiescence (which includes willful blindness) is that the Honduran police failed to locate the gang members who threatened her in the three prior instances of extortion. However, as the IJ found, the record evidence indicates that the Honduran police did everything that they could to locate the gang members. After Alfaro-Urbina went to the police and filed a report, the police received her report and went to her store to investigate. But Alfaro-Urbina, understandably, was only able to provide limited information about the gang members' identities (they were wearing masks at the times that they threatened her). Soon after the police began to investigate, Alfaro-Urbina closed down her store and left the

country. Therefore, as the IJ found, "[t]here was no time for . . . the police force to set up a patrol around her store in an attempt to arrest these thugs in the midst of the next time they came in to shake her down" and "[t]here was no time for the government to put an undercover officer in her store waiting for these thugs to come back." (A.R. at 56.) Thus, Alfaro-Urbina did not meet her burden of demonstrating that the government had caused or acquiesced in, or would cause or acquiesce in, her alleged torture.

Based on the record before it, the BIA agreed with the IJ that Alfaro-Urbina had failed to demonstrate government acquiescence, and there is nothing in the record that compels us to reach a contrary conclusion. Therefore, we must uphold the BIA's decision to deny CAT relief. *See, e.g.*, *Zaldana Menijar*, 812 F.3d at 502.

### III. CONCLUSION

For the reasons stated above, we **DENY** Alfaro-Urbina's petition for review.