**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1692
_____

MIGUEL ANGEL MELO GUTIERREZ,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(A201-666-374)
Immigration Judge: D'Anna H. Freeman
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 17, 2021

Before: KRAUSE, PHIPPS, and FUENTES, *Circuit Judges*.

(Filed: November 12, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This immigration petition brought by Miguel Angel Melo Gutierrez, a Mexican native and national who concedes removability, involves two distinct sets of issues.

The first relates to timeliness. Melo Gutierrez's petition was due on a day when the courthouse was closed due to the COVID-19 pandemic. Although he filed his petition two days after that initial due date, it qualified as timely because the clerk's office was inaccessible on those intervening days. *See* Fed. R. App. P. 26(a)(3)(A).

The second set of issues concerns Melo Gutierrez's requests for relief from removal. According to Melo Gutierrez, on four separate occasions while working as a taxi driver in Mexico, he succumbed to threatening demands for transportation by armed persons associated with cartels. Due to his experience as a cartel-commandeered taxi driver, Melo Gutierrez requested asylum, statutory withholding, and protection under the Convention Against Torture. The Immigration Judge rejected those claims. The Board of Immigration Appeals upheld those rulings on administrative appeal. In reviewing factual findings for substantial evidence, *see Dia v. Ashcroft*, 353 F.3d 228, 248 (3d Cir. 2003) (en banc), and legal issues *de novo*, *see Denis v. Att'y Gen.*, 633 F.3d 201, 205 (3d Cir. 2011), we will deny the petition.

I.

The first issue is the timeliness of Melo Gutierrez's petition. The BIA issued a final order of removal on February 25, 2020. By statute, a petition to review a final order of removal must be filed within thirty days of the order. *See* 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of

2

removal."). That time limit is jurisdictional, and a petition will be dismissed if filed after the thirty-day deadline. *See McAllister v. Att'y Gen.*, 444 F.3d 178, 185 (3d Cir. 2006) (dismissing a petition filed thirteen days late). Using a thirty-day time limit, Melo Gutierrez's petition was due on Thursday, March 26, 2020. But he did not file his petition until Saturday, March 28.

Melo Gutierrez contends that those additional two days should not count toward the thirty-day limit because the clerk's office was inaccessible on those days due to the COVID-19 pandemic. By rule, the time to file is extended automatically during the period that the clerk's office is "inaccessible." Fed. R. App. P. 26(a)(3)(A) ("[I]f the clerk's office is inaccessible . . . on the last day for filing under Rule 26(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday[.]"). Thus, the timeliness of Melo Gutierrez's petition depends on whether the clerk's office was inaccessible on either Thursday, March 26, 2020, or Friday, March 27, 2020.

The clerk's office was inaccessible on those days. On Wednesday March 25, 2020, the Chief Judge of the United States District Court for the Eastern District of Pennsylvania issued an order closing the James A. Byrne United States Courthouse due to two reports of potential COVID-19 infections in the building.[1] That order closed the

---

[1] *In re: Temporary Closing of the James A. Byrne U.S. Courthouse in Philadelphia*, U.S. Dist. Ct. for the E.D. Pa. (Mar. 25, 2020) (available at https://www.ca3.uscourts.gov/sites/ca3/files/Order%20re%20Temporary%20Closing%20 of%20Byrne%20Courthouse_FINAL_032520.pdf).

entire building from noon on Wednesday, March 25, 2020, through Sunday, March 29, 2020, and it made explicit that "[n]o one w[ould] be permitted to enter the building during this closure with the exception of GSA-authorized cleaning personnel."[2]  Because the clerk's office for the Third Circuit is located within the Byrne Courthouse, it was inaccessible during that time, so Melo Gutierrez's petition received an automatic extension.  *See* Fed. R. App. P. 26(a)(3)(A).  With that extension, his petition was timely.

It is immaterial that the Third Circuit's electronic filing system remained operable during the period of closure or even that Melo Gutierrez electronically filed his petition on a day when the courthouse was closed.  The plain text of the rule concerns the accessibility of the "clerk's office," not the capability to file electronically.  *See* Fed. R. App. P. 26(a)(3)(A).  And because the building housing the clerk's office was closed by court order, the clerk's office was inaccessible during that period – at least as much as it is on Saturdays, Sundays, and legal holidays.  The option to file electronically on those days does not diminish the automatic extension for filings otherwise due on those days. *See* Fed. R. App. P. 26(a)(1)(C) (extending the time to file if the last day of the period is a Saturday, Sunday, or legal holiday without regard to electronic filing capabilities on those days).  Likewise, the capability to file electronically during the court-ordered COVID-19 closure does not overcome the inaccessibility of the clerk's office.

---

[2] *Id.*

4

II.

The second set of issues relates to Melo Gutierrez's requests for relief from removal. The Immigration Judge denied Melo Gutierrez's requests for asylum and statutory withholding of removal on two grounds. The Immigration Judge did so, first because Melo Gutierrez failed to identify a cognizable particular social group as the three groups that he posited lacked an immutable characteristic and were insufficiently particular. The other independent rationale articulated by the Immigration Judge was the lack of a nexus between Melo Gutierrez's persecution and his membership in a particular social group. The Immigration Judge also denied Melo Gutierrez's request for CAT relief because he did not demonstrate government acquiescence or the inability to relocate safely to another part of Mexico. On administrative appeal, the BIA adopted and affirmed the Immigration Judge's asylum and statutory withholding rulings. The BIA also upheld the Immigration Judge's denial of CAT relief, but it did so on modified grounds. It concluded that Melo Gutierrez did not meet his burden to show more-likely-than-not-torture in Mexico by or with the consent of a public official. Melo Gutierrez now petitions for review of those rulings.

A.      None of the Novel Particular Social Groups Proffered by Melo
         Gutierrez Are Legally Cognizable.

Asylum and statutory withholding of removal have a common element: membership in a particular social group. *See* 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); 8 U.S.C. § 1231(b)(3)(A) (withholding of removal). To satisfy this element, Melo Gutierrez postulates that he belongs to three particular social groups: "(1) Mexican male

5

transportation workers compelled to work for cartel organizations; (2) Mexican nationals who have refused to provide transportation services to cartel members; (3) Males who return to Mexico after having refused to provide transportation services to Mexican cartels." Pet'r's Br. at 15. None of those groups have ever been recognized as particular social groups by any court – for good reason.

The first proffered group has two fatal flaws. One is that particular social groups are typically defined by "immutable characteristics" or, alternatively, other characteristics of "fundamental importance," such as religion. *Escobar v. Gonzales*, 417 F.3d 363, 367 (3d Cir. 2005). A particular social group defined by an occupation that does not require specialized skills or training typically does not satisfy the immutability requirement.[3] Consistent with that reality, this Circuit has not recognized a person's status as a worker in the transportation industry as an immutable characteristic for a particular social group. Such status is not immutable, and it is not of such fundamental importance to override its malleability. *See Gonzalez-De Leon*, 932 F.3d at 493; *Matter of Acosta*, 19 I. & N. Dec.

---

[3] *See, e.g.*, *Macedo Templos v. Wilkinson*, 987 F.3d 877, 882–83 (9th Cir. 2021) (concluding that being a wealthy business owner is not an immutable characteristic); *Canales-Rivera v. Barr*, 948 F.3d 649, 657–58 (4th Cir. 2020) (rejecting a proposed particular social group of "merchants in the formal Honduran economy"); *Gonzalez-De Leon v. Barr*, 932 F.3d 489, 492–93 (6th Cir. 2019) (rejecting proposed particular social groups based on prior employment as a taxi driver in Guatemala); *see also Matter of Acosta*, 19 I. & N. Dec. 211, 234 (BIA 1985) (rejecting a particular social group consisting of taxi drivers who refused to yield guerillas), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987); *cf. Plancarte v. Garland*, 9 F.4th 1146, 1154–55 (9th Cir. 2021) (finding that a particular social group consisting of "female nurses" contains immutable characteristics due to "specialized nursing skills" that make nurses "uniquely valuable to the cartel in a way that taxi drivers are not").

6

at 234.  Independently, such a broad definition – premised on working in the transportation industry, an entire sector of a national economy – is hardly particularized within the meaning of the asylum and withholding statutes.  *See* 8 U.S.C. § 1158(b)(1)(B)(i); 8 U.S.C § 1231(b)(3)(A); *Ochoa v. Gonzales*, 406 F.3d 1166, 1170–71 (9th Cir. 2005) (holding that proposed particular social group comprised of "business owners in Colombia who rejected demands by narco-traffickers to participate in illegal activity" is insufficiently particularized).

The lack of particularity is also a problem for the second social group that Melo Gutierrez postulates.  That group – Mexican nationals who refuse to provide transportation services to cartel organizations – is potentially even more expansive than the first proffered group, which was at least limited to those employed in the transportation services industry.  This second group includes *any* citizen of Mexico who can provide transportation and who refused to provide transportation to *any* member of *any* cartel organization.  This broad and amorphous group is not "particular" within the plain and ordinary meaning of that term, especially in its context as a modifier to the term "social group."[4]

---

[4] *See Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 179 (3d Cir. 2020) ("[A] proposed particular social group must 'be discrete and have definable boundaries' – not 'amorphous, overbroad, diffuse, or subjective.'" (quoting *Matter of M-E-V-G*, 26 I. & N. Dec. 227, 239 (BIA 2014))); *Khan v. Att'y Gen.*, 691 F.3d 488, 498 (3d Cir. 2012) (rejecting proposed group of Americanized Pakistanis as "too amorphous"); *Escobar*, 417 F.3d at 368 (finding that characteristics such as "[p]overty, homelessness and youth are far too vague and all encompassing to be characteristics that set the perimeters for a protected group"); *see also Castillo-Arias v. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006) ("'[P]articular social group' should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere."); *Gomez v. INS*, 947 F.2d 660,

The final posited particular social group – males who return to Mexico after having refused to provide transportation services to Mexican cartels – is likewise insufficiently particular. Not every loose amalgam of immutable characteristics, such as gender and past conduct, as used here, generates a particular social group. The law is clear that more is required.[5] And without additional or more focused defining characteristics, Melo Gutierrez's novel group does not constitute a particular social group.

B.     Melo Gutierrez Did Not Establish the Required Nexus Element.

The BIA's separate basis for denying asylum and statutory withholding – a failure to establish the requisite nexus between the alleged persecution and membership in a particular social group – is also supported by substantial evidence. The nexus element examines whether membership in a particular social group provides "one central reason"

---

664 (2d Cir. 1991) ("[T]he attributes of a particular social group must be recognizable and discrete. Possession of broadly-based characteristics such as youth and gender will not by itself endow individuals with membership in a particular group.").

[5] *See Radiowala v. Att'y Gen.*, 930 F.3d 577, 584 (3d Cir. 2019) ("[T]he inquiry is 'whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some *significant* way.'" (quoting *M-E-V-G*, 26 I. & N. Dec. at 238)); *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 547 (3d Cir. 2018) (stating that a proposed particular social group must "have more in common than simply describing persecution aimed at an immutable characteristic" (quoting *M-E-V-G*, 26 I. & N. Dec. at 236)); *see also Canales-Rivera*, 948 F.3d at 658 ("An application for asylum requires more than designating an otherwise undefined group and identifying characteristics that apply to members of society in general."); *Gonzalez v. Att'y Gen.*, 820 F.3d 399, 405 (11th Cir. 2016) ("[S]haring a common, immutable characteristic is a necessary, but not sufficient, condition to qualify as a particular social group under BIA precedent."); *Mayorga-Vidal v. Holder*, 675 F.3d 9, 15 (1st Cir. 2012) ("[L]oose descriptive phrases that are open-ended and that invite subjective interpretation are not sufficiently particular to describe a protected social group.").

for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 131 (3d Cir. 2009); *see also Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 & n.6 (3d Cir. 2015) (extending the one-central-reason test to withholding of removal).

Here, Melo Gutierrez did not show that his membership in any of the groups was one central reason for the threats he received. As to his first proffered group, which includes transportation workers who were compelled to work for cartels, Melo Gutierrez does not provide any evidence that one central reason for his threats was that he had previously been compelled to work for cartels. The same analysis applies to his other two proffered particular social groups, which both include persons who refused to provide transportation to cartels. Melo Gutierrez does not establish that one central reason for his threats was his previous refusal to drive for cartel members. *See Gonzalez-Posadas*, 781 F.3d at 685 ("[I]solated criminal acts do not constitute persecution on account of a protected characteristic."). Rather, in reviewing the record, both the Immigration Judge and the BIA found that the cartel members commandeered taxi drivers like Melo Gutierrez for their own financial advantage and to survive when threatened by rival gangs. Thus, substantial evidence supports the BIA's conclusion that Melo Gutierrez failed to satisfy the necessary nexus element for asylum and statutory withholding.

C. Melo Gutierrez Did Not Make the Showings Needed for Relief Under the Convention Against Torture.

To obtain CAT relief, Melo Gutierrez must show that it is "more likely than not" that he will be tortured if removed to Mexico. *Radiowala*, 930 F.3d at 585 (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002)).

He has not made that showing. His evidence does not demonstrate past torture. *See* 8 C.F.R. § 208.16(c)(3)(i). Four isolated instances of threats without physical harm hardly constitute the "intentional infliction of severe pain and suffering" needed to prove torture. *Radiowala*, 930 F.3d at 585; *see also* 8 C.F.R. § 208.16(c)(3)(i). Although Melo Gutierrez claims that "the same thing" will happen to him if he relocates to another part of Mexico,[6] *see* 8 C.F.R. § 208.16(c)(3)(ii), that would still not amount to torture. In also attempting to prove mass human rights violations against taxi drivers throughout Mexico, *see* 8 C.F.R. § 208.16(c)(3)(iii), Melo Gutierrez offers nothing more than his statement that "the danger exists all throughout the Mexican Republic."[7] That conclusory assessment does not suffice to qualify for CAT protection.

Beyond failing to establish the possibility of future torture, Melo Gutierrez has also not shown government acquiescence. *See Amanfi v. Ashcroft*, 328 F.3d 719, 725 (3d Cir. 2003) (explaining that a CAT applicant bears the burden of proving the acquiescence of a public official). He produced evidence that the Mexican government has unsuccessfully tried to rein in the cartels, but that failure does not rise to the level of

---

[6] Hr'g Tr. at 61 (Aug. 15, 2019) (AR140).

[7] Hr'g Tr. at 61–63 (Aug. 15, 2019) (AR140–42).

acquiescence, which requires willful blindness or, alternatively, an awareness of torture coupled with subsequent governmental inaction. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017).

* * *

For the foregoing reasons, we will deny the petition.