# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2376

_____

Paul Ngwenyi Ngugi

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 17, 2016
Filed: June 27, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Paul Ngugi, a native and citizen of Kenya, petitions for review of a decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge's (IJ) denial of his petition for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition for review.

## I.

Ngugi is a citizen of Kenya and a member of the Kikuyu ethnic group.  Before coming to the United States in 2009, he worked in the transportation industry.  While working as a driver, Ngugi began to come in contact with members of the Mungiki, a Kikuyu sect that, according to evidence presented by Ngugi, is "seen as Kenya's version of the mafia."[1]  First, they demanded protection money from Ngugi.  Later, starting in March 2005, the Mungiki approached Ngugi to join them to help recruit and train younger members.  Ngugi had been recruiting and training new drivers and bus conductors, encouraging them to become transport drivers instead of joining the Mungiki.  When Ngugi refused to join the Mungiki, they threatened him.

In early June 2005, four Mungiki members hijacked Ngugi's minibus, ordering everyone to the floor and directing Ngugi at gunpoint to drive them to a "slum," where they robbed the passengers and beat Ngugi.  Later that month, six Mungiki members armed with guns and knives attacked Ngugi at his home after he had parked his minibus, robbing both him and the conductor.  The Mungiki members demanded to know why Ngugi had not joined them.  Ngugi again refused to join them, prompting the attackers to beat him, hit him with the butt of a gun, and stab him in the thigh.  Ngugi received treatment at a hospital for his injuries but did not report the incident out of fear.  Mungiki members attacked Ngugi again in August 2005 while he was a passenger on a minibus.  Although he tried to escape the Mungiki by working for a long-distance driving company, they robbed and attacked him twice more, in October and December 2008.

---

[1]The Mungiki previously have been described as Kenya's "largest criminal organization." *Kanagu v. Holder*, 781 F.3d 912, 914 n.1 (8th Cir. 2015).  Their criminal activity includes running protection rackets, "particularly in the public transportation sector," as well as "harass[ing] and intimidat[ing] residents." *Id.*

After those attacks, Ngugi left Kenya.  He obtained a J-1 visa to attend the University of Missouri-Columbia, entering the United States on March 22, 2009 with authorization to remain until April 22, 2010.  During this period, Ngugi met and married Ruthie McKnight, a U.S. citizen.  As McKnight intended to petition for Ngugi to become a lawful permanent resident, he applied for a no-objection letter for his J-1 visa and applied for waiver of the foreign-residence requirement.  He received approval of the waiver on February 1, 2011.  Soon afterward, the couple decided to divorce.

Ngugi filed a Form I-589 application for asylum with United States Citizenship and Immigration Services in April 2011.  On his application, he checked boxes indicating that he was seeking asylum based on persecution on account of religion, political opinion, membership in a particular social group, as well as seeking protection under the CAT.  He stated that the Mungiki had targeted him because they wanted to control and profit from the transportation industry, and Ngugi was an educated Kikuyu working in that industry.  He further stated that he refused to join the Mungiki because, as a Christian, he "d[id] not approve of the nature of their group, or their activities."  In explaining his fear of harm upon return to Kenya, he stated that "[t]he Mungiki group is mad at me because I have refused to join them," that they were interested in him because of his education and demonstrated leadership skills, and that the Mungiki targeted the transportation industry for extortion.

Ngugi testified to the facts above at his hearing before the IJ.  In his pre-hearing brief, Ngugi argued that he had been persecuted and that he had a well-founded fear of persecution "based on his status as (1) the victim of crime, in this case, extortion; (2) a Kikuyu who resisted recruitment by the Mungiki; and (3) a member of the transportation industry."  He argued that his proposed particular social groups were the same as the particular social group of "Mungiki defectors" previously held socially visible in Kenya by this court in *Gathungu v. Holder*, 725

-3-

F.3d 900, 908 (8th Cir. 2013). Ngugi also submitted documentary evidence that included news articles and reports about the Mungiki.

The IJ issued a written decision denying Ngugi's claims. With regard to Ngugi's asylum claim, the IJ first found that Ngugi had failed to establish past persecution on account of his claimed bases of religion, membership in a particular social group, or political opinion. The IJ reasoned that the Mungiki had not attacked him "on account of" his religion but rather because they wished to recruit him. Likewise, the IJ found Ngugi's political opinion to amount to no more than a generalized opposition to the Mungiki's criminal activity. Next, the IJ rejected Ngugi's proposed particular social groups of extortion victim, participant in the transportation industry, and witness to Mungiki criminal activity. The IJ concluded that "[a]fter reviewing the evidence, it would appear that [Ngugi] was targeted by the Mungiki because he refused to join their organization" and concluded that opposition to gang activity or refusal to join criminal gangs were not bases for particular social groups.

The IJ also found that Ngugi had failed to establish a well-founded fear of future persecution because, even assuming the objectivity of Ngugi's fear, his fear of future harm was "based upon general conditions of crime and violence that affect all Kenyans," such that Ngugi's fear was "not sufficiently 'particularized.'" The IJ also rejected Ngugi's argument that he had a well-founded fear of persecution based on membership in the recognized particular social group of Mungiki defectors because Ngugi never had joined the Mungiki.

With Ngugi's asylum claim rejected, the IJ necessarily rejected Ngugi's withholding-of-removal claim. Finally, the IJ rejected Ngugi's CAT claim because Ngugi had not presented evidence that he or any family member ever had undergone torture in Kenya or that he would be at risk for torture upon return to Kenya.

-4-

Ngugi appealed to the BIA. The BIA adopted and affirmed the IJ's reasoning and conclusions, dismissing Ngugi's appeal and ordering Ngugi removed from the United States. This petition for review followed.

## II.

"We review questions of law *de novo*, and we review the agency's factual determinations under the substantial evidence standard." *De Castro-Gutierrez v. Holder*, 713 F.3d 375, 379 (8th Cir. 2013). "Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." *Id.* (quoting *Al Yatim v. Mukasey*, 531 F.3d 584, 587 (8th Cir. 2008)). When, as here, the BIA adopted the findings or reasoning of the IJ, we review the IJ's decision as part of the final BIA action. *Etenyi v. Lynch*, 799 F.3d 1003, 1006 (8th Cir. 2015).

To establish eligibility for asylum, "an applicant must show that [he or] she is unable or unwilling to return to [his or] her country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Marroquin-Ochoma v. Holder*, 574 F.3d 574, 577 (8th Cir. 2009) (quoting 8 U.S.C. § 1101(a)(42)(A)). "As the wording of the statute indicates, the alien must show not only persecution or a fear of persecution, but also that such persecution is 'on account of one of the five protected grounds.'" *Onsongo v. Gonzales*, 457 F.3d 849, 852 (8th Cir. 2006) (quoting *Hassan v. Ashcroft*, 388 F.3d 661, 666 (8th Cir. 2004)); *see also Gomez v. Gonzales*, 425 F.3d 543, 545 (8th Cir. 2005) ("To reverse the finding that the alleged persecution was not based on a protected ground, it is necessary that the record compel the finding that a protected ground motivated the [persecution]."). Here, substantial evidence supports the IJ's and BIA's conclusion that Ngugi did not suffer persecution "on account of" his claimed protected grounds of political opinion, religion, or membership in a particular social group.

Ngugi first argues that he was persecuted on account of his political opinion. Although Ngugi did not advance before the IJ any specific political opinion he held or that the Mungiki imputed to him, the IJ characterized Ngugi's argument as claiming a political opinion "related to his opposition to the criminal activity of the Mungiki." Ngugi attempts to bolster this characterization on appeal by urging that, because the Mungiki participate in the corruption of the political process in Kenya, his refusal to join them and his community activism in motivating others to refuse to join them represented the expression of a political opinion. However, Ngugi testified persistently that the Mungiki targeted him because they wanted him to join them and to train their new recruits. Even if the Mungiki comprise a politically natured gang, "the mere refusal to join [such a gang], without more, does not compel a finding that the gang's threats were on account of an imputed political opinion." *See Marroquin-Ochoma*, 574 F.3d at 579.

Ngugi next argues that he was persecuted on account of his religion, claiming that, "as a practicing Christian, [he] could never join such a violent criminal group." However, Ngugi neither testified nor presented any other evidence that the Mungiki were aware of his religious motivation for refusing to join them or of his religious beliefs more generally. *Cf. I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (noting that petitioner who resisted recruitment by guerillas "has to establish that the record . . . compels the conclusion that he has a 'well-founded fear' that the guerillas will persecute him *because of* [a protected ground], rather than because of his refusal to fight with them"). Accordingly, the evidence does not compel us to find that the Mungiki targeted him "on account of" his religious beliefs.

Ngugi also asserts that he suffered persecution on account of his membership in two particular social groups: (1) witnesses to criminal activities of the Mungiki and

(2) Kikuyus who resist recruitment by the Mungiki.[2]  "Whether a group is a 'particular social group' presents a question of law, which we review de novo." *Malonga v. Mukasey*, 546 F.3d 546, 553 (8th Cir. 2008)  "'Particular social group' is an ambiguous phrase, not defined in the statute.  This court gives *Chevron* deference to the BIA's reasonable interpretation of the phrase."  *Ngengwe v. Mukasey*, 543 F.3d 1029, 1033 (8th Cir. 2008) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984)).  The BIA recently has clarified the factors it considers in evaluating membership in a particular social group:  the petitioner "must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."  *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *see also Juarez Chilel v. Holder*, 779 F.3d 850, 855 (8th Cir. 2015) (applying *Matter of M–E–V–G–*).

With respect to Ngugi's argument that witnesses to the criminal activities of the Mungiki constitute a particular social group, Ngugi presented no evidence to support the conclusion that merely having seen or experienced crime would satisfy the particularity or social-distinction prongs.  *Cf. Constanza v. Holder*, 647 F.3d 749, 754 (8th Cir. 2011) (rejecting social groups that "are too diffuse to be recognized as a particular social group").  Furthermore, Ngugi presented no evidence that he ever

---

[2]On appeal, Ngugi attempts to argue that he suffered persecution on account of his membership in another particular social group:  Kikuyu youth mentors and community leaders opposed to the Mungiki.  However, Ngugi did not argue this group before either the IJ or the BIA, despite the IJ's admonition at Ngugi's hearing that this "might have been . . . a stronger argument."  Because "we lack jurisdiction to consider arguments not clearly made before the agency," *Kanagu*, 781 F.3d at 917, we cannot consider this group here.  Nor do we consider the social groups of "Kenyans in the transportation industry" and "victims of extortion" that Ngugi argued before the agency but has not argued on appeal to our court.  *See Mambwe v. Holder*, 572 F.3d 540, 550 n.7 (8th Cir. 2009) (considering basis for asylum not raised in opening brief as waived on appeal).

served as a witness against the Mungiki in any public proceedings or, even if he had, that Kenyan society "recognizes the unique vulnerability of people who testify against gang members in criminal proceedings." *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1091-92 (9th Cir. 2013) (holding that those who testify in court against cartel members fulfill the social-visibility prong because significant evidence showed Salvadoran society recognized such witnesses, including through the passage of legislation to protect them); *see also Matter of C–A–*, 23 I. & N. Dec. 951, 960 (BIA 2006) (limiting social visibility of informants to those informants who are discovered by cartel as a result of appearing as witnesses or otherwise coming to their attention). We thus agree with the IJ's and BIA's determination that witnesses to the criminal activities of the Mungiki do not form a cognizable particular social group.

Likewise, Ngugi has offered no evidence that Kikuyus who resist recruitment by the Mungiki are viewed as a socially distinct group within Kenyan society, nor does he offer any authority to distinguish this proposed group from the groups of persons resistant to gang violence or persons who suffer violence as a result of their refusal to join a gang that we have held not to constitute particular social groups. *See, e.g.*, *Juarez Chilel*, 779 F.3d at 855; *Constanza*, 647 F.3d at 754. Ngugi argues that this conclusion improperly fails to consider the Kenyan cultural context because the effect of the Mungiki on Kenyan society is not the same as the effect of gangs in the countries discussed in our prior opinions. Although we previously have recognized the unique impact of Mungiki criminal activity in Kenya, *see Kanagu*, 781 F.3d at 914 n.1, this argument does nothing to shed light on the social distinction of Kikuyus who resist Mungiki recruitment efforts. Accordingly, we agree with the IJ's and BIA's determination that Kikuyus who resist recruitment by the Mungiki do not form a cognizable particular social group.

Ngugi nonetheless argues that he is entitled to a new hearing because of the change in particular-social-group analysis wrought by *Matter of W–G–R–*, 26 I. & N. Dec. 208 (BIA 2014) and *Matter of M–E–V–G–*, 26 I. & N. Dec. 227 (BIA 2014).

-8-

Ngugi argues that these cases, which were published after the IJ's decision, changed the third component of the particular-social-group analysis from social visibility to social distinction and that this change merits remand for consideration in the first instance by the IJ. *Compare Matter of S–E–G–*, 24 I. & N. Dec. 579, 582 (BIA 2008) (demonstrating that the third particular-social-group factor formerly required that the group "possess a recognized level of social visibility") *with Matter of M–E–V–G–*, 26 I. & N. Dec. at 237 (requiring that a particular social group be "socially distinct within the society in question"). However, these cases merely clarified that "[l]iteral or 'ocular' visibility" was not required under the prior social-visibility prong. *See, e.g., Matter of M–E–V–G–*, 26 I. & N. Dec. at 238. Additionally, Ngugi has "provide[d] no authority in support of his argument that a change in the BIA's explanation of 'particular social group' would alter the agency's decision or otherwise compel remand by our court." *See Kanagu*, 781 F.3d at 919. Indeed, although those precedents arose after the IJ issued its ruling, the BIA applied them in affirming the IJ's rejection of Ngugi's particular-social-group claims. We thus decline to remand on this issue. *See id.*

Without a showing of past persecution, Ngugi does not benefit from the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1); *Gomez*, 425 F.3d at 546. The burden of proof to show a well-founded fear thus falls to Ngugi. *See Gomez*, 425 F.3d at 546. Here, Ngugi argues that he fears future persecution on account of his membership in the particular social group of Mungiki defectors, a group we previously have recognized. *Gathungu*, 725 F.3d at 907-08. He admits that he never belonged to the Mungiki and thus could not have defected from them but nonetheless urges that Kikuyus who resist recruitment into the Mungiki are analogous to defectors. We disagree. In *Gathungu*, we considered Mungiki defectors to constitute a particular social group because the record demonstrated that Kenyan society perceived them as a specific group targeted by the Mungiki, as evidenced by detailed reports of murders targeting Mungiki defectors and a higher incidence of crime by the Mungiki against defectors than against Kenyans

in general. *Id.* at 908. Because Ngugi presents no comparable evidence regarding Kikuyus who resist recruitment into the Mungiki and because Ngugi never joined the Mungiki, however, we decline to apply this reasoning to his case.

Accordingly, substantial evidence supports the BIA's conclusion that Ngugi failed to establish his eligibility for asylum. Because Ngugi failed to meet his burden of proof for asylum, he necessarily fails to meet the higher burden of proof required for withholding of removal. *See* 8 U.S.C. § 1231(b)(3); *Fofana v. Holder*, 704 F.3d 554, 558 (8th Cir. 2013).

III.

For the reasons set forth above, we deny Ngugi's petition for review.[3]

_____

[3]Ngugi does not raise any arguments on appeal as to the denial of his CAT claim, so we consider this claim waived. *See Juarez Chilel*, 779 F.3d at 856 n.2.