# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1430

_____

Henry Oswaldo Miranda

*Petitioner - Appellant*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent - Appellee*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 9, 2018
Filed: June 11, 2018

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Henry Oswaldo Miranda, a native and citizen of El Salvador, petitions for review of a Board of Immigration Appeals (Board) order reversing an Immigration Judge's (IJ) decision granting Miranda withholding of removal. We deny the petition.

On December 12, 2011, the Department of Homeland Security (DHS) charged Miranda with removal as an alien present in the United States without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Miranda admitted to the DHS's factual allegations and conceded removability. He requested withholding of removal under 8 U.S.C. § 1231(b)(3)(A).[1]

During a hearing before the IJ, Miranda testified that he left El Salvador in 2008 because he was threatened by gang members and because the country was impoverished. In February 2007, Miranda was a moto-taxi driver in Quezaltepeque, El Salvador. One night, three MS-13 gang members stopped him and demanded a ride to a nearby town. Two of the men entered the back seat of the taxi, and the third person—a teenage boy—rode in the front passenger seat. While Miranda drove, one of the men took out a firearm and shot the boy in the head three times. After the boy fell out of the moto-taxi, the man pointed the firearm at Miranda, who stopped the vehicle. Miranda and the two men exited the moto-taxi, and the gunman shot the boy six times in the face, telling him, "You got this because you were talking." Miranda understood that the man shot the boy because the boy had spoken ill of the MS-13 gang. As the two men fled, the shooter told Miranda, "You haven't seen any of this. If you tell anyone about this, I am going to come back and kill you." Miranda reported the incident to his employer, the owner of the taxi business, who did not report it to law enforcement. At that time, Miranda was a well-known taxi driver and a member of the union.

Approximately one month after the shooting, Miranda saw one of the gang members at a local market. Miranda felt threatened when the man said, "They are looking for you. They are looking for you." Miranda believed the statements meant that the MS-13 gang wanted him dead or that the victim's family (who Miranda

---

[1]Miranda also sought protection under the Convention Against Torture (CAT), which was denied. Miranda has not appealed from the denial of CAT relief.

believed to be associated with the MS-13 gang) wanted him dead. Miranda had heard through his half-sister that the victim's family also was looking for him, that the boy's mother eventually discovered that Miranda was the driver of the moto-taxi in which her son was shot, and that the family said, "If [Miranda] didn't talk, he was going to have to pay the consequences." Miranda stopped working and stayed at his mother's house. His mother received threatening phone calls several weeks after the shooting. On one occasion, she gave five-hundred dollars to the caller. When Miranda's mother reported the calls to the police, they told her to change her telephone number. After she did so, the calls stopped.

The IJ found Miranda credible and admitted into evidence the country report for El Salvador and news articles about crimes against taxi drivers and about gang violence in El Salvador.

Miranda argued that he was entitled to withholding of removal because the threats against him were motivated by his membership in the particular social group consisting of "former taxi drivers from Quezaltepeque who have witnessed a gang murder." The IJ agreed, concluding that the proposed group was socially distinct based on (1) Miranda's testimony that he was a well-known taxi driver and member of a union and (2) news articles that indicated taxi drivers in El Salvador are at risk of extortion and other crime. The IJ further determined that the circumstances of the murder Miranda had witnessed, as well as the subsequent threats by gang members and by the victim's family, together constituted past persecution. Based on the facts establishing past persecution and the threats that his mother had received, the IJ determined that Miranda also had proved a well-founded fear of future persecution. The DHS appealed the IJ's decision. The Board sustained the appeal, reversed the grant of withholding of removal, and ordered Miranda removed to El Salvador, concluding that his proposed particular social group was not cognizable and that he had not suffered past persecution.

An alien is entitled to withholding of removal if he shows a clear probability that his life or freedom would be threatened in the country of removal on account of one of several protected grounds, including "membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). Miranda argues that the IJ properly granted withholding of removal based upon his finding that Miranda was a member of a particular social group and that he had suffered past persecution (and would suffer future persecution) on account of his membership in that group. Miranda claims that the Board erroneously applied a *de novo* standard of review to the IJ's factual findings, when it should have reviewed them for clear error. The government argues that the Board accepted the IJ's underlying factual findings and properly reviewed *de novo* the questions whether those facts satisfied the definition of "particular social group" or rose to the level of "persecution."

When deciding appeals, the Board reviews the IJ's findings of fact for clear error and "may review questions of law, discretion, and judgment and all other issues . . . de novo." 8 C.F.R. § 1003.1(d)(3)(ii). Whether a group constitutes a "particular social group" presents a question of law. Ngugi v. Lynch, 826 F.3d 1132, 1137-38 (8th Cir. 2016); Matter of W-G-R-, 26 I. & N. Dec. 208, 210 (BIA 2014) ("While the analysis of a particular social group claim is based on the evidence presented and is often a fact-specific inquiry, the ultimate determination whether a particular social group has been established is a question of law."). Accordingly, the Board properly reviewed for clear error the IJ's historical and predictive fact-finding, see 8 C.F.R. § 1003.1(d)(3)(i), and it properly reviewed *de novo* the question whether those underlying facts met the legal definitions of "particular social group."

We likewise review *de novo* the question whether a group consisting of "former taxi drivers from Quezaltepeque who have witnessed a gang murder" constitutes a "particular social group" for purposes of withholding of removal. See Ngugi, 826 F.3d at 1136 (standard of review). A particular social group is "(1) composed of members who share a common immutable characteristic, (2) defined

with particularity, and (3) socially distinct within the society in question." Id. at 1138 (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)). To be socially distinct, "there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristics to be a group. . . . [I]t must be commonly recognized that the shared characteristic is one that defines the group." Matter of W-G-R- 26 I. & N. Dec. at 217. "[W]hether a social group is cognizable is a fact-based inquiry made on a case-by-case basis." Matter of L-E-A-, 27 I. & N. Dec. 40, 42 (BIA 2017).

The Board concluded that Miranda's proposed group was not socially distinct because he did not present evidence that "'former taxi drivers from Quezaltepeque who have witnessed a gang murder' will be perceived, considered or recognized by Salvadoran society to be a distinct social group." We agree. Although Miranda himself was known for having worked as a taxi driver in Quezaltepeque and having witnessed a gang murder, Miranda did not present evidence that he shared that characteristic with others or that the characteristic was commonly recognized as defining a particular social group. Similarly, Miranda did not present evidence that former taxi drivers are perceived to be a group. See Matter of Acosta, 19 I. & N. Dec. 211, 234 (BIA 1985) (members of taxi cooperative in El Salvador did not constitute "particular social group"), *overruled on other grounds by* Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). Although he presented evidence that taxi drivers are at risk for extortion or crime in El Salvador, there is nothing in the record to show that former taxi drivers face that same risk. Moreover, the record does not support the conclusion that witnessing a gang murder places Miranda in a socially distinct group, particularly since he did not testify against any gang members. Compare Ngugi, 826 F.3d at 1138 (witnesses to criminal activities of the Mungiki sect in Kenya did not constitute "particular social group"), with Henriquez-Rivas v. Holder, 707 F.3d 1081, 1091-92 (9th Cir. 2013) (en banc) (witnesses who testified in court against cartel members fulfilled the social distinction prong because significant evidence showed Salvadoran society recognized such witnesses, including through the passage of

-5-

legislation to protect them). We thus uphold the Board's legal determination that Miranda's proposed group consisting of "former taxi drivers from Quezaltepeque who have witnessed a gang murder" does not constitute a cognizable "particular social group."

Miranda argues that the case should be remanded for the IJ to determine in the first instance whether the following social groups constituted particular social groups: "(1) El Salvadorian taxi drivers who have witnessed a gang murder; (2) El Salvadorian males who have witnessed a gang murder; and (3) El Salvadorian taxi drivers who have been subjected to gun violence by gang members." Petitioner's Br. 26. Miranda had suggested these groups in his pre-hearing brief to the IJ. After the evidentiary hearing, the IJ decided not to address the other groups because he had determined that the proposed social group discussed above constituted a cognizable particular social group. We see no reason to remand the case, however, because there is no record evidence to support the conclusion that these groups are particular or socially distinct. See INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam) (explaining that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)); Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007) (applying the "rare circumstances" exception when "the result of a remand to the Board is a foregone conclusion such that remand would amount to nothing more than a mere formality").

Unable to establish a cognizable particular social group, Miranda cannot show that any past or future persecution would be on account of a protected ground. See Cambara-Cambara v. Lynch, 837 F.3d 822, 826 (8th Cir. 2016) ("The [applicant for asylum or withholding of removal] bears the burden of showing that his membership in a particular social group was or will be a central reason for his persecution." (alteration in original) (quoting Matter of W-G-R-, 26 I. & N. Dec. at 224)); Garcia v. Holder, 746 F.3d 869, 872-73 (8th Cir. 2014) ("The 'central' question is whether

the applicant's status as a member of a particular social group is the reason for that individual's persecution." (alteration omitted) (quoting Gathangu v. Holder, 725 F.3d 900, 908 (8th Cir. 2013))).  We thus do not reach the question whether the Board applied the appropriate standard of review to the IJ's determination that the threats Miranda received and the harm he suffered were severe enough to constitute persecution.

The petition for review is denied.

————————————————————