United States Court of Appeals

For the Eighth Circuit
_____

No. 22-1734
_____

Jaime Armando Oxlaj

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States of America

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: March 16, 2023
Filed: May 3, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Jaime Armando Oxlaj petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal. Oxlaj is an auto mechanic from Guatemala. He testified that in February 2013 he took the bus to buy some tools. On the bus ride home, three men robbed him and the other passengers on the bus. He did not see the faces of two of the robbers. One of the men pressed a knife against Oxlaj's right side and took one of his cellphones and his wallet (containing his

identification card). The man had a tattoo that Oxlaj understood to be identified with a criminal gang. Oxlaj filed a police report and gave the police the number for the cellphone he still had.

The next day, someone called Oxlaj threatening to kill him for going to the police, so Oxlaj got a new phone number. In August, someone again called him, threatening to kill him unless he paid money. Two days later, three men tried to kidnap him. Oxlaj reported the attempted kidnapping to the police. Fearing these threats, he came to the United States in November. While in the United States, Oxlaj learned that a letter was left outside his grandparents' house, where Oxlaj had lived in Guatemala, demanding money and threatening him as a consequence for filing a police report.

In 2014, the Attorney General initiated removal proceedings against Oxlaj. He then applied for asylum, withholding of removal, and protection under the Convention Against Torture. To the Immigration Judge ("IJ"), Oxlaj argued that he was persecuted for his "anti-gang" political opinion and for his membership in the particular social group of witnesses who cooperate with law enforcement. The IJ denied his application, concluding that Oxlaj did not show that his proposed social group is cognizable and did not demonstrate a connection between his persecution and his imputed political opinion or membership in his proposed social group. Oxlaj appealed to the BIA, which adopted the IJ's decision. The BIA agreed with the IJ's findings that Oxlaj's proposed social group is not cognizable and that he has not established the requisite connection. Oxlaj appeals the BIA's decision, arguing that the BIA erred in concluding that his proposed social group lacks particularity and social distinction and that the BIA's decision is unclear so we must remand for clarification.

We review the denial of an application for asylum and withholding of removal for substantial evidence, *see Silvestre-Giron v. Barr*, 949 F.3d 1114, 1117 (8th Cir. 2020); *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005), but we review questions of law *de novo*, *Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016).

-2-

"Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." *Id.* "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." *Silvestre-Giron*, 949 F.3d at 1117.

To be eligible for asylum, Oxlaj must show that he is a refugee, *see* 8 U.S.C. § 1158(b)(1)(A), who is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See id.* § 1101(a)(42)(A). "Whether a group is a 'particular social group' presents a question of law, which we review de novo." *Ngugi*, 826 F.3d at 1137-38. Because "particular social group" is ambiguous, we give *Chevron* deference to the BIA's reasonable interpretation of the phrase. *Id.* at 1138. To demonstrate membership in a particular social group, the applicant "must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). As to social distinction, "persecutory conduct alone cannot define the group. Whether a given particular social group is perceived as distinct by the society of which it is part depends on evidence that the society makes meaningful distinctions based on the common immutable characteristics defining the group." *Fuentes v. Barr*, 969 F.3d 865, 871 (8th Cir. 2020).

To qualify for withholding of removal, an applicant has the burden of showing a clear probability that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *Malonga v. Mukasey*, 546 F.3d 546, 551 (8th Cir. 2008).

We begin with Oxlaj's argument that the BIA erred in concluding that his proposed social group—witnesses who cooperate with law enforcement—lacks

social distinction and particularity. We agree with the BIA that Oxlaj has not proven that his proposed social group is socially distinct. Oxlaj relies on out-of-circuit precedent to argue that a proposed social group can be socially distinct based on the perception of the persecutor rather than society as a whole. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1090 (9th Cir. 2013). He says that we adopted a similar view in *Gathungu v. Holder*, 725 F.3d 900 (8th Cir. 2013). But there we concluded that "the record amply demonstrates Kenyan *society* perceives 'Mungiki defectors' as a specific group targeted by the Mungiki," even if "Kenyan society might not be able to identify a Mungiki defector by sight." *Id.* at 908 (emphasis added). Likewise, in *Ngugi*, we relied on the principle that society must view the proposed social group as distinct. 826 F.3d at 1138 (concluding that the petitioner offered no evidence "that Kenyan society recognizes the unique vulnerability of people who testify against gang members in criminal proceedings" (internal quotation marks omitted)). Here, Oxlaj has presented no evidence that Guatemalan society recognizes witnesses who cooperate with law enforcement as a socially distinct group. Thus, the BIA did not err in concluding that his proposed social group lacks social distinction and in denying his asylum claim. *See Lemus-Coronado v. Garland*, 58 F.4th 399, 404 (8th Cir. 2023) (agreeing with the BIA that the petitioner failed to establish that her proposed social group, witnesses who cooperate with law enforcement, was socially distinct in Guatemala). Because Oxlaj failed to meet his burden of proof for asylum, he "necessarily fails to meet the higher burden of proof required for withholding of removal." *See Ngugi*, 826 F.3d at 1139 (citing 8 U.S.C. § 1231(b)(3)).

None of Oxlaj's other arguments warrant granting his petition for review. Oxlaj asks us to remand for clarification based on three alleged errors. First, Oxlaj argues that the BIA's decision is confusing because the BIA adopted the IJ's decision and also gave reasons for why it agrees with the IJ's findings. Under *Matter of Burbano*, the BIA is not prohibited from adopting the IJ's decision and also explaining why it agrees with the IJ. *See* 20 I. & N. Dec. 872, 873-74 (B.I.A. 1994) (stating that the BIA can adopt or affirm a decision of the IJ "in whole or in part"). Moreover, nothing the BIA said conflicts with the IJ's reasoning. Oxlaj points to the BIA's refusal to address whether the Guatemalan government is unable or

unwilling to protect Oxlaj from gang violence. But the BIA's decision did not conflict with the IJ's simply because the BIA declined to address an issue that was unnecessary to its decision.

Second, Oxlaj argues that the BIA erroneously adopted the IJ's reliance on *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), for the presumption against asylum claims based on private conduct because that decision was later overturned, *see Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021). We disagree. Neither the BIA nor the IJ applied a presumption against Oxlaj's asylum claim on the ground that private, not government, actors allegedly persecuted him. And even if they had, remand would be unnecessary because we already concluded that Oxlaj has not proven membership in a cognizable social group.

Third, Oxlaj argues that the BIA adopted several erroneous findings of the IJ: all three of the robbers' faces were covered, Oxlaj filed a police report only so he could build an asylum claim, and the psychologist's report about Oxlaj's mental health was unreliable. None of these statements, even if erroneous, require us to grant Oxlaj's petition because the BIA and the IJ did not rely on them in concluding that Oxlaj's proposed social group lacks social distinction.

For the foregoing reasons, we deny Oxlaj's petition for review.

_____

-5-