# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2472

_____

Efren Uriostegui-Teran

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: June 14, 2023
Filed: July 6, 2023

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Efren Uriostegui-Teran petitions for review after the Board of Immigration Appeals ("BIA") dismissed his appeal. We deny his petition.

# I.

Uriostegui-Teran is a rancher from Mexico who fears returning. He gives several reasons why. Twice, his uncles were kidnapped and held for ransom. The second time, the kidnapping was reported to the police. And though the police said they would "try to help," they were ultimately unable to "do[] anything." On another occasion, someone took pictures of Uriostegui-Teran's family home and then demanded money and threatened to kidnap a family member. And once, when he was driving from his family's ranch to his home, two vans began chasing him. The vans tried to run him off the road, so he fired a weapon at his unknown assailants. After they had driven off, he drove to a police station and requested an escort to the bus station, which the police provided. Later, someone called Uriostegui-Teran's father and threatened to kill Uriostegui-Teran. Finally, someone once left a sign at his sister's business demanding money.

Shortly after Uriostegui-Teran entered the United States, the Attorney General began removal proceedings against him. Uriostegui-Teran conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He claimed that he was persecuted on account of his membership in the following social groups: (1) "Cattle ranchers/farmers in Mexico"; (2) "Landowners in Mexico"; (3) "Business owners in Mexico"; (4) "Family of cattle ranchers/farmers in Mexico"; (5) "Family of landowners in Mexico"; (6) "Family of business owners in Mexico"; (7) "The Uriostegui family"; (8) "The Uriostegui-Teran family"; (9) "Family of Juan Uriostegui Jimenez"; (10) "Family of gang kidnapping victims"; (11) "Family of gang extortion victims"; and (12) "Deported Americanized Mexicans/ponchos."

The Immigration Judge ("IJ") denied his applications. As to asylum and withholding of removal, the IJ concluded that Uriostegui-Teran's proposed social groups were not cognizable and that, even if some were, he failed to establish a nexus between them and the alleged persecution. As for CAT relief, the IJ found that Uriostegui-Teran failed to establish that, if he were returned to Mexico, he would be

tortured with the acquiescence of a public official. Uriostegui-Teran appealed to the BIA, which adopted the IJ's decision. The BIA explained that it agreed with the IJ's social-group-cognizability and nexus rulings, as well as the IJ's determination regarding CAT relief. The BIA also rejected Uriostegui-Teran's challenge to its jurisdiction. Uriostegui-Teran appeals.

## II.

We review the denial of an application for asylum, withholding of removal, or CAT relief for substantial evidence, *Rivera Menjivar v. Garland*, 27 F.4th 638, 641 (8th Cir. 2022), and we review questions of law *de novo*, *Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016). "Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." *Id.* "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." *Silvestre-Giron v. Barr*, 949 F.3d 1114, 1117 (8th Cir. 2020).

As a preliminary matter, we reject Uriostegui-Teran's argument that the BIA lacked jurisdiction over his removal proceedings because his notice to appear lacked a hearing date and time. As he acknowledges, this argument is foreclosed by our decision in *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019).

### A.

We begin with Uriostegui-Teran's argument that the BIA erred in concluding that he failed to show membership in a cognizable particular social group. To be eligible for asylum, Uriostegui-Teran must show that he is a refugee, *see* 8 U.S.C. § 1158(b)(1)(A), meaning that he is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," *see id.* § 1101(a)(42)(A). And to "qualify for withholding of removal, an

applicant has the burden of showing a clear probability that his life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Malonga v. Mukasey*, 546 F.3d 546, 551 (8th Cir. 2008) (citation and internal quotation marks omitted); *see* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b).

"Whether a group is a 'particular social group' presents a question of law, which we review de novo." *Ngugi*, 826 F.3d at 1137-38. To demonstrate membership in a particular social group, the applicant "must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* at 1138 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).

We agree with the BIA that Uriostegui-Teran has not proven membership in a particular social group. His first six proposed social groups—cattle ranchers, landowners, and business owners and their families—fail for lack of social distinction. Uriostegui-Teran did not introduce any evidence that Mexican society views these groups as socially distinct. *See, e.g.*, *Davila-Mejia v. Mukasey*, 531 F.3d 624, 629 (8th Cir. 2008) ("[P]etitioners here failed to establish that their status as 'competing family business owners' gave them sufficient social visibility to be perceived as a group by society.").

The BIA also did not err in rejecting proposed social groups seven through eleven—the Uriostegui, Uriostegui-Teran, and Uriostegui-Jimenez families, and the families of gang kidnapping and gang extortion victims—for lack of particularity. Although "a nuclear family can constitute a social group," *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 881 (8th Cir. 2005), Uriostegui-Teran's proposed social groups are not limited to his immediate family and lack any "well-defined boundaries," *Matter of S-E-G-*, 24 I. & N. Dec. 579, 582 (B.I.A. 2008). Instead, the groups "could include fathers, mothers, siblings, uncles, aunts, nieces, nephews, grandparents, cousins, and others." *Id.* at 585; *cf. Constanza v. Holder*, 647 F.3d 749, 753-54 (8th Cir. 2011) (agreeing with the BIA that petitioner's membership in

"a family that experienced gang violence" lacked the "particularity required to constitute a social group").

Finally, the BIA properly rejected his twelfth proposed social group—"Deported Americanized Mexicans/ponchos"—for lack of social distinction. Despite Uriostegui-Teran's argument that this group is "immediately recognizable" due to its members' language and mannerisms, the record contains no evidence supporting his assertion that people deported from the United States to Mexico are recognized as a socially distinct group. *See Matul-Hernandez v. Holder*, 685 F.3d 707, 713 (8th Cir. 2012) (agreeing with the BIA that the petitioner failed to establish that her proposed social group, "Guatemalans returning from the United States who are perceived as wealthy," was socially distinct).

Because Uriostegui-Teran failed to establish membership in a cognizable particular social group, the BIA did not err in denying his applications for asylum and withholding of removal. *See* § 1231(b)(3); *Constanza*, 647 F.3d at 753-54 (agreeing with the BIA that a petitioner could not show that he was entitled to withholding of removal where he failed to prove membership in a cognizable social group). We therefore need not address Uriostegui-Teran's nexus-related arguments, whether for asylum or withholding of removal.

B.

We now consider whether the BIA erred in concluding that Uriostegui-Teran does not qualify for CAT relief. "The CAT prohibits the Government from removing an alien to a country where he is more likely than not to be tortured." *Hassan v. Rosen*, 985 F.3d 587, 589 (8th Cir. 2021). "Torture" is defined as certain acts that cause "severe pain or suffering, whether physical or mental . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does

-5-

cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009).

Here, the record does not support Uriostegui-Teran's contention that the Mexican government has turned a blind eye to criminal-gang-inflicted torture. When one of Uriostegui-Teran's uncles was kidnapped, the police offered to help. The fact that they were unable to "do[] anything" does not evidence acquiescence. *See Marroquin-Ochoma v. Holder*, 574 F.3d 574, 580 (8th Cir. 2009) (holding that evidence that "law enforcement is weak and inexperienced" was not evidence of government acquiescence). And when Uriostegui-Teran sought help from the police after the car chase, they provided it. Uriostegui-Teran counters that country-conditions reports show that criminal organizations have infiltrated the Mexican police and government. Yet he does not explain how this "general infiltration" makes the Mexican government "likely to acquiesce in *his* torture." *See Hassan*, 985 F.3d at 590. Thus, we conclude that substantial evidence supports the BIA's decision to deny CAT relief.

### III.

For the foregoing reasons, we deny Uriostegui-Teran's petition for review.

_____