**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1370
_____

RAUL MATOS-SALAZAR; ELIZABETH ROSARIO VASQUEZ; B. M-V; F. M-V,

Petitioners

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency Nos. A240-828-422, A240-636-473, A240-827-533, A240-827-799)
Immigration Judge: Nicole Beason-Lane
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on January 20, 2026

Before: RESTREPO, FREEMAN, and MASCOTT, *Circuit Judges*

(Filed: June 2, 2026)

_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Petitioners are natives and citizens of Peru, and they petition for review of the final Order of removal entered by the Board of Immigration Appeals ("BIA" or "Board") that dismissed their appeal from the decision of an Immigration Judge ("IJ"). The IJ denied the application of lead petitioner, Raul Matos-Salazar ("Petitioner"), for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") regulations.[1] For reasons that follow, we deny the petition for review.

## I.[2]

Petitioners entered the United States without authorization on May 13, 2022. In July of 2022, the Department of Homeland Security ("DHS") filed Notices to Appear ("NTAs") with the Immigration Court, charging them with removability pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without having been admitted or paroled. In written pleadings, filed through counsel, they admitted the allegations in their NTAs and conceded that they were removable as charged.

On October 12, 2022, Petitioner filed counseled applications for asylum, withholding of removal, and CAT protection. He sought asylum and withholding of removal based on his claim of persecution on account of his asserted membership in three particular social groups ("PSGs"): (1) Peruvian nuclear families who resist organized crime control; (2) Peruvian nuclear families who report organized crime groups to the

---

[1] The remaining petitioners are listed as derivative beneficiaries on the asylum application.

[2] Because we write solely for the parties, we assume familiarity with the facts.

police; and (3) Peruvian nuclear families who have no protection from the government. In support of the applications, Petitioner submitted, among other things, his own affidavit, a police report, and affidavits from individuals in Peru. He also testified at a March 4, 2024 hearing.

On March 4, 2024, the IJ issued a decision denying the applications. The IJ found that Petitioner's testimony and corroboration were credible, and the asylum application was timely filed. The IJ further determined that none of Petitioner's three proposed PSGs was cognizable under the INA and, among other things, that Petitioner failed to establish past persecution or a well-founded fear of future persecution based on a protected ground. Since Petitioner failed to satisfy the lower burden of proof required for asylum, the IJ also concluded he failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. Finally, the IJ denied protection under CAT because he found that Petitioner failed to establish the necessary requirements that it was more likely than not he would be tortured if removed to Peru or that any such speculative torture would be committed by, at the instigation of, or with the consent or acquiescence of Peruvian public officials.

The BIA dismissed the appeal and affirmed the IJ's determination that none of Petitioner's three proposed PSGs was cognizable under the INA. The Board further affirmed the IJ's determination that, even assuming Petitioner had presented a cognizable PSG, he failed to demonstrate "the required nexus between the harm he suffered and fears and his membership in the groups." AR 5-6. Accordingly, the BIA affirmed the denial of asylum, and thus also Petitioner's failure to meet the higher burden of proof for

3

withholding of removal.  Finally, the BIA affirmed the denial of Petitioner's CAT application and determined that, "[g]iven the [IJ's] findings of fact, [Petitioner] did not establish that he would be subjected to treatment that qualifies as 'torture' with the necessary governmental acquiescence under the governing CAT regulations and the relevant precedents."  AR 7.

## II.

We are vested with jurisdiction to review final orders from the BIA under 8 U.S.C. § 1252(a).  We review the BIA's decision as well as the IJ's decision to the extent the BIA adopted the IJ's findings or reasoning.  *See Singh v. Att'y Gen.*, 839 F.3d 273, 282 (3d Cir. 2016).  We review legal determinations de novo and "accept factual findings if supported by substantial evidence."  *Sesay v. Att'y Gen.*, 787 F.3d 215, 220 (3d Cir. 2015) (quoting *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 n.5 (3d Cir. 2015)).  Under the deferential substantial evidence standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001) ("[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").

### (A)    Eligibility for Asylum and Withholding of Removal

A removable noncitizen is eligible for asylum if he demonstrates that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of [the country to which he would be removed] because of persecution or a well-founded

4

fear of persecution on account of . . . membership in a [PSG]." 8 U.S.C. § 1101(a)(42)(A). A noncitizen is eligible for withholding of removal if he shows "that it is more likely than not that he . . . would be persecuted on account of . . . membership in a [PSG] . . . upon removal to [the designated] country."[3] 8 C.F.R. § 1208.16(b)(2). Thus, the standard for withholding of removal is similar to the standard for asylum, but it carries a higher burden. Because withholding of removal requires proof of a higher likelihood of future persecution, "an applicant who cannot meet the standard for asylum will necessarily be unable to meet the standard for withholding of removal." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348-49 (3d Cir. 2008).

To establish a cognizable PSG for purposes of asylum and withholding of removal, an applicant must establish that the proposed group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 547 (3d Cir. 2018) (internal quotation marks omitted). On appeal, petitioners challenge the finding that the second proposed PSG - Peruvian nuclear families who report organized crime groups to the police – is not cognizable under the INA.

---

[3] "Though asylum and withholding are two separate forms of relief with different standards of proof, a petitioner who bases his or her claim for either on membership in a [PSG] must, *inter alia*, establish that the [PSG] in question is legally cognizable." *Radiowala v. Att'y Gen.*, 930 F.3d 577, 583 (3d Cir. 2019).

Specifically, petitioners assert that the proposed PSG satisfies the requirements of immutability, particularity, and social distinction. *Id.*

However, as respondent points out, the BIA reasonably determined that the proposed PSG is not cognizable because it does not satisfy the social distinction requirement. The social distinction requirement asks "whether the people of a given society would perceive a proposed group as sufficiently separate or distinct." *Id.* at 550 (internal quotation marks omitted). In articulating the social-distinction requirements, "persecutory conduct alone cannot define a group." *Radiowala*, 930 F.3d at 585 (quoting *S.E.R.L.*, 894 F.3d at 549). A group of persons "indistinguishable from those in the general public whom a criminal gang might otherwise suspect as having informed on it," without more, does not qualify as a PSG. *Id.* at 584.

Here, the proposed PSG fails the social-distinction requirement, and the Board properly affirmed the IJ's decision, concluding that Petitioner failed to show that the group possesses fundamental identifying characteristics which cause such individuals to be perceived as a distinct social group by Peruvian society. Although petitioners cite *Guzman Orellana v. Attorney General*, 956 F.3d 171 (3d Cir. 2020), to support their proposed PSG, as petitioners concede, *Guzman Orellana* involved "witnesses who have publicly provided assistance to law enforcement against major Salvadoran gangs." *Id.* at 179-80. As the BIA pointed out, "the fact that [Petitioner's proposed PSG] is comprised of individuals whose cooperation with law enforcement was not public in nature suggests that the proposed group is not cognizable." AR 5. Providing assistance to law enforcement in public, such as the act of testifying in open court, "lends itself to societal

6

recognition – generally, speaking in open court means that all are readily aware of the group and its members." *Radiowala*, 930 F.3d at 583. That the "informant status may have, by a means unlike and other than testifying publicly, been disclosed to alleged persecutors does not change the analysis." *Id.* at 584; *see Ngugi v. Lynch*, 826 F.3d 1132, 1138 (8th Cir. 2016) (rejecting a proposed PSG of "witnesses to the criminal activities" of a group in part because there was no evidence that the petitioner "ever served as a witness against the [group] in any public proceedings").

Further, to the extent the petitioners argue that the proposed PSG is socially distinct as a group of persons targeted for their willingness to speak the truth at great risk to themselves, such a proposed group "is a non-starter" because such a group is defined by the harm or potential harm posed to its members, and "persecutory conduct alone cannot define a group." *Radiowala*, 930 F.3d at 585 (quoting *S.E.R.L.*, 894 F.3d at 549). Here, Petitioner does not claim that he provided assistance to law enforcement in public, and he fails to show the BIA erred in concluding that the proposed PSG does not possess fundamental identifying characteristics which cause such individuals to be perceived as a distinct social group by Peruvian society for purposes of the INA. He fails to meet his burden to identify evidence compelling reversal of the agency's no-social-distinction finding. *See, e.g., DeLeon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 357 (3d Cir. 2010); 8 U.S.C. § 1252(b)(4)(B). Because the proposed PSG in question is not legally cognizable

under the INA, petitioners' claims for asylum and withholding of removal fail.[4] *See*

*supra* note 3; *Radiowala*, 930 F.3d at 583.

### (B) Eligibility for CAT Relief

An applicant is eligible for CAT protection if he establishes that it is more likely

than not that he would be tortured if removed and that public officials will commit or

acquiesce to the torture. *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019).

Here, Petitioner can show neither of the requirements for eligibility, and the BIA had

ample reason to conclude Petitioner did not meet his burden of establishing that he would

be subjected to treatment that qualifies as "torture" with the necessary governmental

acquiescence under the CAT regulations.

The record does not compel the finding that Petitioner established that it is more

likely than not that he will face torture if he returns to Peru, defined as "an extreme form

of cruel and inhuman treatment" and includes only "severe pain or suffering." 8 C.F.R. §

1208.18(a)(1)-(2) (2020); *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 92 (3d Cir. 2021).

As the IJ found and the BIA affirmed, the evidence supports the conclusion that

Petitioner did not have any personal encounters with members of the relevant criminal

---

[4] Having found Petitioner failed to show the proposed PSG is socially distinct within the society in question, it is unnecessary to address the other two required characteristics of a PSG under the INA. Nor is it necessary to address whether Petitioner established the required nexus between past or feared harm and membership in a proposed PSG. *See* 8 U.S.C. § 1101(a)(42) (petitioner must show a well-founded fear of persecution "*on account of* race, religion, nationality, membership in a particular social group, or political opinion") (emph. added). However, we note that the timing of the events Petitioner recounted does not support a nexus.

organization after they robbed him one time, members of that organization told his mother they were looking for him but did not convey any threats about him to his mother, and Petitioner has not received any communications from members since the robbery and has no direct evidence that he is being targeted by the criminal organization.

The BIA also properly concluded that Petitioner did not establish the requisite state action. He is unable to establish that Peruvian officials would instigate, consent or acquiesce to his torture. *See Quinteros*, 945 F.3d at 786. As the Board pointed out, the evidence indicates that Petitioner filed a police report and proceeded to leave Peru soon thereafter without following up with the police. Moreover, Petitioner testified that he learned the police arrested and incarcerated one of the members who robbed him.

## III.

For the foregoing reasons, we deny the petition for review.